# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H.J., *a minor*, by BLANCHE WELLS, GUARDIAN | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 17-3229 |
| DELAPLAINE MCDANIEL SCHOOL et al., | : | |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                              NOVEMBER 30, 2017

This case comes before the Court on behalf of a minor plaintiff who was attacked and beaten by an elementary school bully in January 2016. She argues that the school officials are liable for this attack because they created the danger that ultimately led to her injuries by failing to discipline past instances of bullying or stop the attack when it happened. At issue is a motion to dismiss the two state law claims and a federal § 1983 claim against both the school district and its employees.[1]

There is no question that the suffering endured by the child plaintiff—both physical and emotional—engenders profound sympathy and dismay. Bullying is an issue around the country, and no parent or guardian should have to stand idly by as his or her child is attacked or taunted.[2] However, the federal remedies against a school or school officials for a child's injuries, even on

---

[1] The plaintiff has stipulated to dismissal of the other claims in the complaint, and to all claims against the City of Philadelphia.

[2] The National Center for Education Statistics and Bureau of Justice Statistics estimates that 28% of children are bullied between grades 6 and 12. Although the rate of bullying steadily decreases as children grow older, only between 20% and 30% of instances are reported to adults. *See generally* U.S. Department of Education, Student Reports of Bullying and Cyber-Bullying: Results From the 2011 School Crime Supplement to the National Crime Victimization Survey (August 2013) https://nces.ed.gov/pubs2013/2013329.pdf.

school premises, are limited. Section 1983 was enacted to prohibit intentional acts by government officials. For the plaintiff to recover, she must show that the bullying was aided in some way by an affirmative act taken by the school. Ultimately, this is a mountain that the plaintiff cannot climb, and the motion to dismiss is granted. Given that the § 1983 claim is dismissed, the state law claims must be dismissed as well. The plaintiff is granted leave to amend her complaint in accordance with this memorandum opinion and corresponding order.

## BACKGROUND

### I. Factual Background

The plaintiff, H.J., is an elementary school student who has been routinely bullied in her time at school. The bullying culminated in an event in January 2017 where H.J. was attacked and had to be hospitalized. There was a group of students watching the attack at the scene, and a school official allegedly present "allowed" the beating to happen. Am. Compl. ¶ 14. Moreover, the complaint alleges that the school "actively encouraged this behavior of students by allowing it, failing to punish the perpetrators and instead retaliating against H.J. and punishing H.J. for complaining about these incidents." Am. Compl. ¶ 17. H.J.'s guardian, on behalf of H.J., has sued the school administrators as well as the school district for the attack.

### II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, H.J. must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

To state a claim against an individual under § 1983, a plaintiff must show that the defendant (1) was a person who (2) under the color of state law (3) caused a (4) deprivation of constitutional rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Such a claim is strictly circumscribed. Neither side here argues that the complaint failed to allege a deprivation of constitution rights, or that the defendants were persons acting under the color of state law. The question at hand focuses on the causation requirement in § 1983, in which H.J. relies on a theory of indirect liability.

H.J. alleges a violation of her substantive due process right to bodily integrity[3] and claims that school officials are liable for the injuries she received at the hands of a bully. H.J. advances

---

[3] The complaint references many other constitutional provisions, but none of them are applicable and the Court dismisses them. Moreover, the constitutional provision at issue is irrelevant to the analysis below.

two arguments to support this claim. The first is a claim of state-created danger,[4] and the second is a claim of *Monell* liability for an offending custom or practice.

## I. State-Created Danger

"As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). A claim of state-created danger is one of two narrow exceptions to that general rule. To prevail on this theory, H.J. must prove the following four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;
> 2) a state actor acted with a degree of culpability that shocks the conscience;
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (en banc). The facts in *Morrow* were similar to the ones here. The *Morrow* plaintiffs brought suit against a school district because their children were bullied so pervasively that the parents were forced to withdraw their children from school. Each separate bullying incident was reported to the school officials. After hearing of the bully's actions, the school suspended her.

---

[4] To hold school officials liable for bullying under § 1983, the plaintiff must show either (1) a special relationship between the students and the officials or (2) that the school officials created or enhanced the danger to the bullied students. *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) (en banc). Neither side argues that a special relationship exists here, and for good reason. Such an argument has been rejected by the Third Circuit Court of Appeals. *See Id.* at 177 ("[W]e cannot fashion a remedy under the special relationship theory based on the facts alleged in this case."); *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir. 1992) (en banc) (finding no special relationship between a school and students). The plaintiff must rely on the argument that the school officials created or enhanced the danger to the bullied students.

Although the school in *Morrow* took steps to stop the bullying, they did not go so far as to expel the bully. Eventually, the bully attacked and injured the plaintiffs. The parents sued, arguing both a special relationship and state-created danger under § 1983. The *Morrow* court rejected both theories. The court rejected the first theory out of hand, as it had been resolved by earlier case law. *See D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir. 1992) (en banc). The court focused on the extent to which school officials can be held liable for bullying under a state-created danger theory, and ultimately held that the school could only be held liable for affirmative acts.

The *Morrow* plaintiffs argued that allowing the bully to return from a suspension constituted affirmative action on the part of school officials. In rejecting that claim, the Third Circuit Court of Appeals noted that "the line between action and inaction is not always easily drawn." *Morrow*, 719 F.3d at 177. But to convert such passive inaction to an "affirmative act" would convert *any* decision on the part of school officials into an affirmative act that gives rise to liability. In the *Morrow* case, such a rule would convert action aimed at protecting the children (suspending the bully) into an act that gives rise to liability for a state-created danger, given that a suspension will eventually allow the bully back into school. It would create incentives for school officials to put their heads in the sand and allow bullying to run rampant, because the minute the school official takes action to protect students, it would give rise to liability for not protecting the student *enough*. Such a conclusion is untenable, given that an expansive reading of an affirmative act would convert § 1983 from a statute that requires an affirmative act into one that merely requires but-for causation.

The dispute in *Morrow* (and here) centered on the fourth element. The *Morrow* court held that the state actors did not affirmatively use their authority to create a danger. The court relied

6

on the fact that allowing a student to return to school was not the same as affirmatively placing students in an unsafe situation. Similarly, H.J. alleges that school officials encouraged the bully here "by allowing [bullying], failing to punish the perpetrators and instead retaliating against H.J. and punishing H.J. for complaining about these incidents." Am. Compl. ¶ 17.

As described in the complaint, that act of encouragement is insufficient under controlling case law. In a certain sense, every inaction is action. Any time a school official fails to have every corner of a school patrolled by security, it increases the risk of an assault between students. As that straight forward situation demonstrates, the decision to *not* act does not and cannot rise to the level of action sufficient to meet the requirements for a state-created danger. The *Morrow* court highlighted the perverse results that this would entail: even an act to protect students, where a student is nonetheless injured, would then be sufficient to meet a state-created danger claim. Rather, for H.J.'s complaint to rise to the level of a state-created danger, she would need to allege facts that show an active effort on the part of the school to encourage bullying, and an effort to make the school a less safe place for the children. Short of such facts, H.J. cannot meet her burden of establishing a state-created danger.

H.J. also argues encouragement by a school official during the actual attack. Again, this hinges on the extent to which that school official encouraged the act. It is not enough to allege that the school official tacitly endorsed the attack by inaction, as H.J. does. H.J. would need to allege that the school official took steps to make the bullying happen, or stepped in to aid in the attack somehow. Either way, the official who supposedly witnessed the attack is not a defendant, and in any case, the school district cannot be held liable under a *respondeat superior* theory of liability. Such a theory would, at a minimum, require amending the complaint to identify and add this John Doe school official as a defendant and then alleging more than passive encouragement.

7

## II. Supervisory Liability

The second argument H.J. advances is supervisory liability, commonly known as *Monell* liability. The Supreme Court has only addressed the question of supervisory liability twice in the last half century. First, in *Rizzo v. Goode*, the Court found that a "pattern of frequent police violations" was insufficient to hold a police department liable under § 1983. 423 U.S. 362, 374 (1976). The Court held that there must be an "adoption and enforcement of deliberate policies" by defendants to give rise to liability. *Id.* The Court refined this standard two years later in *Monell*. There, a group of women challenged an official policy requiring pregnant employees to take unpaid leaves of absence. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). The Court held the challenge to the official policy was permissible, but such liability is limited. *Id.* at 659. Although local governments were "persons" under § 1983, they could not be held liable under a theory of *respondeat superior*. *Id.* at 691.

To be liable, the government must perform an official act. The "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Id.* at 690. However, "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*

In other words, for a supervisor to be held liable under *Monell*, there must be either (1) an official act or (2) a custom that caused the deprivation of civil rights. The *Monell* Court rejected, as a categorical matter, the concept of *respondeat superior* liability in § 1983. Rather, there must be a "decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 659. "Individual defendants who are policymakers may be

8

liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

As lower courts analyzed the *Rizzo* and *Monell* cases, two salient features emerged. First, for supervisory liability to attach, a plaintiff must either (a) "plead that [defendants] 'directed others to violate her rights'"[5] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d at 586) or (b) that "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989).

Second, liability hinges on causation. For supervisors or policymakers to be liable, their actions must cause the deprivation of civil rights. In a straightforward application, a supervisor would be liable under § 1983 for an unconstitutionally race-based arrest if that arrest was made pursuant to an unconstitutional policy to arrest people based on race. But such a requirement under *Monell* need not be an affirmative step. It can also be "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). To meet the deliberate indifference standard, plaintiffs must plead that (a) there is an unreasonable risk of a deprivation of rights (b) that the supervisor or municipality was aware of that risk (c) that they were indifferent to that risk *and* (d) the failure to enact policies regulating that risk caused the deprivation of rights in this instance. *Id*. Only if all four elements are alleged can a policymaker's inaction fairly be deemed as causing a plaintiff's deprivation of rights under § 1983.

---

[5] H.J. does not advance such a theory.

However, H.J.'s complaint did not assert any facts that would create an inference of a policy or custom to encourage bullying. In her briefing, H.J. merely reiterated the standard under *Monell* and asserted that she "has a claim" under *Monell*. Likewise, at oral argument, counsel for H.J. was unable to point to any specific policy or custom, or allege any facts sufficient to infer a policy or custom.

The Court finds imaginative, but unavailing, H.J.'s unsubstantiated assertion that there was a school policy to "keep order in the school" by allowing "students to release their hatred, aggression, bullying and violence upon H.J. so as to deflect the students' anger at the School administration over poor school conditions." Am. Compl. ¶ 21. Such a policy is not only illogical as a strategic matter, but counter to the goal of the school's mission to provide a safe learning environment to children. It also belies basic conceptions of human decency and dignity. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc.*, 232 F.3d at 183–84. It would be no less unreasonable to allege a school promoted ugly profanity and name-calling in the halls as a way to "vent", as some sort of latter-day version of installing as school policy the adage "sticks and stones may break my bones, but words will never hurt me." That is certainly not today's mantra. Making such unsubstantiated accusations cannot satisfy the requirement that H.J. plead facts in support of the complaint to make it past a motion to dismiss.

Given that H.J. has not adequately alleged a policy or custom, she must rely on the deliberate indifference standard for a lack of a policy. Again, the complaint is void of any allegations of the sort that would evince the school's indifference to an unreasonable risk of a deprivation of civil rights. Absent such allegations, the supervisory liability claim under *Monell* must be dismissed.

### III. Other Claims

The defendants also challenge claims brought against the school district defendants under the ADA and various state law claims. H.J. agreed to dismiss all of them with the exception of the intentional infliction of emotional distress (IIED) and state law negligence claims. Given that the federal anchor claim is dismissed, "the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### CONCLUSION

For the foregoing reasons, the motion to dismiss is granted pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiff is granted leave to amend her complaint before January 4, 2018 to state a claim for relief in accordance with this opinion.

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE